1
2
3
4
5
6

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

7

8
9
10

**Richard Ramon Lopez,**
Petitioner
-vs-
**State of Arizona, et al.,**
Respondents

CV-10-2159-PHX-JAT (JRI)

**REPORT & RECOMMENDATION**
**On Petition for Writ of Habeas Corpus**
**Pursuant to 28 U.S.C. § 2254**

11

### I. MATTER UNDER CONSIDERATION

12

Petitioner, presently incarcerated in the Arizona State Prison Complex at San Luis,

13

Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254

14

on November 22, 2010 (Doc. 8).  On February 7, 2011, Respondents filed their Answer (Doc.

15

13). Petitioner has not replied.

16

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned

17

makes the following proposed findings of fact, report, and recommendation pursuant to Rule

18

8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28

19

U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

20
21

### II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

22

### A. PROCEEDINGS AT TRIAL

23

Petitioner was driving a stolen vehicle, ran from officers, ran over an officer

24

approaching the vehicle after it collided with a pole, drove away, dove from the moving

25

vehicle allowing it to crash into an apartment complex, entered an apartment and demanded

26

to be hidden.  Following a jury trial, Petitioner was convicted on counts of aggravated

27

assault, theft of a means of transportation, unlawful flight, and burglary. (Exhibit A, Mem.

28

1   Dec. 11/6/07 at 1-3.)  (Exhibits to the Answer, Doc. 13, are referenced herein as "Exhibit

2   ___".)  On August 4, 2006, Petitioner was sentenced to a combined prison term of 31.25

3   years. (*Id.* at 4.)

4

5   **B.  PROCEEDINGS ON DIRECT APPEAL**

6        Petitioner filed a direct appeal arguing: (1) the trial court abused its discretion by

7   imposing sentences without adequate investigation; and (2) the sentencing minute entry

8   conflicted with the oral pronouncement of sentence as to whether the offenses were

9   "repetitive."  (Exhibit H, Opening Brief.)

10       On November 6, 2007, the Arizona Court of Appeals issued its Memorandum

11  Decision (Exhibit A), affirming the conviction and correcting the sentencing minute entry

12  to reflect that the counts were non-dangerous repetitive offenses.

13       Petitioner sought review by the Arizona Supreme Court, which was summarily denied

14  on May 12, 2008.  (Exhibit B, Order 5/12/08.)

15       Petitioner asserts that he "filed" a Petition for Writ of Certiorari, but it was "lost in

16  prison transits".  (Amend. Pet., Doc. 8 at 3.)  No record of such Petition being filed has been

17  proffered.  The undersigned finds that none was filed.

18

19  **C.  PROCEEDINGS ON FIRST POST-CONVICTION RELIEF**

20       On June 11, 2008, Petitioner commenced a post conviction relief proceeding by filing

21  his Notice of Post-Conviction Relief (Exhibit C).  That Notice did not specify any grounds

22  for relief.  Counsel was appointed, and eventually filed a Memorandum in Support of Petition

23  arguing that Petitioner received ineffective assistance of counsel at sentencing. (Exhibit G).

24       On October 28, 2009, the PCR court denied the petition on its merits. (Exhibit D, M.E.

25  filed 10/28/09.)

26       Petitioner then sought and obtained from the PCR court an extension until February

27  23, 2010 to file a Petition for Post-Conviction Relief.  (Exhibit I, M.E. 2/16/10.)

28       On March 26, 2010, Petitioner filed his Petition for Review (Exhibit E). That Petition

did not set out any specific claims for review.

On April 1, 2010, Petitioner sought and obtained from the PCR court a second extension until April 30, 2010.  (Exhibit J, M.E. 4/1/10.)

On April 7, 2010, the Arizona Court of Appeals dismissed the Petition for Review as untimely, noting Petitioner's ability to seek leave from the PCR court to make a late filing, but making no mention of the second extension granted by the PCR court on April 1, 2010. (Exhibit F.)

Petitioner did not further seek such leave, nor file a subsequent petition for review.

## D.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Six months later, Petitioner commenced the current case by filing his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 7, 2010 (Doc. 1).  That Petition was dismissed with leave to amend, based upon Petition's failure to name his custodian as a respondent.  (Order 11/4/10, Doc. 6.)

On November 22, 2010, Petition filed his Amended Petition (Doc. 8), asserting the following four grounds for relief:

> In Ground One, he alleges that he received the ineffective assistance of counsel at sentencing in violation of his Sixth Amendment rights. In Ground Two, Petitioner alleges that his Fourteenth Amendment due process rights were violated by the court's refusal to grant him an extension of time to present mitigating evidence. In Ground Three, he alleges that he received an excessive sentence. In Ground Four, he alleges that the trial court abused its discretion by failing to adequately investigate facts relevant to his sentence.

(Order 1/3/11, Doc. 9 at 1-2.) Petitioner makes no argument in his Petition to excuse any untimeliness. (Doc. 8 at 11.)

**Response** - On February 7, 2011, Respondents filed their Answer (Doc. 13). Respondents argue that Petitioner's petition is untimely and barred by the statue of limitation on state prisoner habeas petitions, and that his state remedies on his federal claims were unexhausted and are now procedurally defaulted.

**Reply** - Petitioner has not replied.

### III. APPLICATION OF LAW TO FACTS

**1.  One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed.  *Id.*

**2.  Commencement of Limitations Period**

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1]

It is well established in the Ninth Circuit that for purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *See Bowen v. Roe,* 188 F.3d 1157, 1158 (9th Cir.1999).  Rule 13, Rules of the Supreme Court of the United States provides "90 days after entry of the order denying discretionary review" for a petition for writ of certiorari to be filed.

Petitioner's direct review proceeded through the Arizona Supreme Court's order denying discretionary review on May 12, 2008.  Thus, Petitioner had until August 11, 2008 to file a petition for writ of certiorari.  Petitioner did not do so.

Petitioner asserts that he did file such a petition but complains that his petition was "lost in prison transits." (Amend. Pet. Doc, 8 at 3.)  With no record to support this claim, the

---

[1]  While the finality of the conviction is the normal commencement date for the habeas limitations period, the statute does provide various exceptions, including newly recognized claims made retroactively applicable, and newly discovered factual predicates. *See* 28 U.S.C. § 2244(d)(1). Petitioner does not assert any of these apply.  It does not appear to the undersigned that these have any application.

undersigned cannot find that such a petition was filed.

Perhaps Petitioner intends to argue that it was lost before filing.  Under the prison mailbox rule, filings are deemed "filed" at the time they are delivered to prison officials for mailing.  *See Stillman v. LaMarque*, 319 F.3d 1199 (9th Cir.  2003).  Here, however, Petitioner makes no explicit allegation or showing that he delivered a petition to prison officials for mailing to the courts.  His terse allegations could just as likely mean that he lost his draft while he was in transit within the prison.

Moreover, Petitioner cannot now, years later, rely upon the prison mailbox rule.  In *Huizar v. Carey*, the Ninth Circuit addressed whether the prison mailbox rule "applies even where a prisoner's petition is never filed by the court." 273 F.3d 1220, 1223 (9th Cir. 2001).

> Whether or not the petition is actually placed in the mail, delivered to the court or filed once it arrives there, are all matters beyond the prisoner's control. A prisoner who delivers a document to prison authorities gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time.

*Id.*  Here, Petitioner makes no allegations that he diligently followed up once he failed to receive a disposition with a reasonable time.  Indeed, there is no indication that Petitioner ever attempted to followup on his petition for writ of certiorari.

Accordingly, the undersigned concluded that no petition for writ of certiorari was filed (either actually or by operation of the prison mailbox rule) and Petitioner's conviction became final after August 11, 2008, when his time to file such a petition expired.

Thus, barring any tolling, Petitioner's one year began to run from August 12, 2008 and would have expired on August 11, 2009, over a year prior to commencing this habeas proceeding.

## 4. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).

1   Petitioner commenced his PCR proceeding by filing his PCR Notice on June 11, 2008
2   (Exhibit C).  Petitioner's one year had then not yet begun to run.  That proceeding remained
3   pending at least until the petition was denied by the PCR Court on October 28, 2009.[2]
4   (Exhibit D, M.E. 10/28/09.)

5   For purposes of § 2244(d)(1)(A), an application for state collateral review is
6   "pending" during "the time between a lower state court's decision and the filing of a notice
7   of appeal to a higher state court."  *Carey v. Saffold*, 536 U.S. 214, 217 (2002).   However,
8   that only applies if the appeal is "properly filed."  28 U.S.C. § 2244.

9   Here, the only such petition filed by Petitioner was dismissed as untimely.  (Exhibit
10  F, Order 4/7/10.)  When "the state court reject[s]" a petition for post-conviction relief "as
11  untimely, it [is] not 'properly filed' " and does not toll the limitations period.  *Pace v.*
12  *DiGuglielmo*, 544 U.S. 408, 417 (2005).

13  In some circuits, it is clear that would not have such dire circumstances.  Petitioner
14  had been given (by the PCR court's second extension) until April 30, 2010 to file a petition
15  for review.  Although this extension was granted prior to the Arizona Court of Appeals
16  rejection of his earlier petition for review as untimely, it was not considered by the Arizona
17  Court of Appeals, nor vacated.  Indeed, the Arizona Court of Appeals suggested Petitioner
18  seek leave to file a late appeal.

19  In every circuit known to have addressed the matter, his PCR proceeding would have
20  been pending until his time to file for review expired on April 30, 2010, regardless of the fact
21  that he did not again seek review.  *See Williams v. Bruton*, 299 F.3d 981, 983 (8th Cir. 2002)
22  ("the application is 'pending' (and thus the limitations period is tolled) during the appeal
23  period, even if the petitioner does not appeal"); *Gibson v. Klinger,* 232 F.3d 799, 804 (10th
24  Cir. 2000) ("regardless of whether a petitioner actually appeals a denial of a post-conviction

25

26  [2] Although the Minute Entry is dated October 27, 2009, there is no indication this was
27  a pronouncement in open court, and it was not filed until October 28, 2009.  Because it does
    not affect the outcome, the undersigned presumes the filing date should apply in such a
28  circumstance.

application, the limitations period is tolled during the period in which the petitioner could have sought an appeal under state law"); *Cramer v. Secretary, Dept. of Corrections*, 461 F.3d 1380, 1383 (11th Cir. 2006) (*per curiam*) ("the claim is pending regardless of whether the inmate actually files the notice of appeal");*Williams v. Cain*, 217 F.3d 303, 309–10 (5th Cir. 2000); *Swartz v. Meyers*, 204 F.3d 417, 420–24 (3d Cir. 2000); *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999); *see also Johnson v. McCaughtry*, 265 F.3d 559, 563 n.3 (7th Cir. 2001) (declining to decide the issue).

One commentator has suggested that the Ninth Circuit has properly concluded that this grant of tolling until the time to appeal expires is "inconsistent with the Supreme Court's decisions [indicating] that if a state petition is untimely, none of the time before (or during) the court's consideration of the petition is statutorily tolled."   *See* Means, *Fed. Hab. Man.* §9A:57 (2010).

Indeed, the Ninth Circuit has read the Supreme Court's decision in *Pace* to mean that "if a state court denies a petition as untimely, none of the time before or during the court's consideration of that petition is statutorily tolled." *Bonner v. Carey,* 425 F.3d 1145, 1149 (9th Cir. 2005),  *amended on other grounds by* 439 F.3d 993 (9th Cir.2006). However, nothing in *Pace* holds that the time between a state application and the expiration of the time to appeal therefrom is excluded from statutory tolling.   Factually, *Pace* dealt with a gap between successive post-conviction petitions, and focused on whether the second petition was "properly filed," not how long it was pending. 544 U.S. at 411. Similarly, *Bonner* dealt with whether a state habeas petition filed in the California trial court was untimely, and thus none of the time from its pendency (including several levels of appeal) were tolled.  Bonner itself did not address the effect of time available for appeal after a timely but unsuccessful petition.

The undersigned would be tempted to conclude that the comment in *Bonner* was *dicta*, and proceed with the explicit analysis of the other circuits.

However, in *Thorson v. Palmer*, 479 F.3d 643 (9th Cir. 2007), the court quoted the aforementioned portion of *Bonner* and specifically held that its petitioner was not entitled to

any time after the denial of his intermediate appeal, merely because the California Supreme Court had deemed his final appeal to be untimely.[3]

In *Thorson*, the petitioner sought statutory tolling for the pendency of a series of California state habeas petitions filed successively in the trial court, California Court of Appeal and California Supreme Court. The petitioner had delayed 114 days in filing with the trial court after conclusion of direct review. He delayed more than 13 months after the trial court denied his habeas petition before filing with the California Court of Appeal, who denied review without comment. He then petitioned the California Supreme Court 21 days later who summarily dismissed the petition as untimely.

The *Thorson* court was uncertain whether the California Supreme Court's ruling was that the petition to the Court of Appeal was untimely (as a result of the 13 month delay) or the petition to it was untimely (as a result of the 21 day delay).[4] The Court considered both options, and held:

> even if the California Supreme Court ruling of untimeliness applied only to the 21-day delay in filing the petition in the Supreme Court itself, then Thorson's petition was not "properly filed" in the California Supreme Court. As a result, the AEDPA clock would have begun to run again on the date the California Court of Appeal denied Thorson's second petition and would not have stopped until he filed his federal habeas petition.

*Thorson*, 479 F.3d at 646.

Not only is the undersigned troubled by what appears to be a misinterpretation of *Pace* emanating from the *dicta* of *Bonner*, and infecting the reasoning of *Thorson*, but by the distinction in processes between a state like Arizona, with clearly defined appeal deadlines,

---

[3] California does not a utilize a system of petitions and petitions for review for its post conviction relief processes. Nor does it utilize definite filing deadlines. Instead, "[i]n California, a state prisoner may seek review of an adverse lower court decision by filing an original petition (rather than a notice of appeal) in the higher court, and that petition is timely if filed within a 'reasonable time.'" *Evans v. Chavis*, 546 U.S. 189, 193 (2006).

[4] The Ninth Circuit opined that the ruling probably referred to the 13 month delay, but concluded that they "need not be concerned by any ambiguity in the California Supreme Court's order" because even if the reference was to the 21 day delay in petitioning the high court, the result was the same. 479 F.3d at 646.

and the California procedures at issue in *Bonner* and *Thorson*, which simply required "appeals" within a reasonable time.  The language of *Thorson*, however, admits of no distinction based upon the nature of a state's filing deadlines.

In sum, the undersigned concludes that under *Thorson*, where a state court rejects an appeal on collateral review as untimely, there is no tolling available after the prior order denying relief, not even for the time during which a petitioner had the right to seek further review.

Accordingly, the undersigned must also conclude that the denial of Petitioner's petition for review by the Arizona Court of Appeals as untimely denied Petitioner any equitable tolling after the PCR court's order on October 27, 2009 denying his original petition for post-conviction relief.[5]

Thus, Petitioner's one year was statutorily tolled from June 11, 2008 through October 27, 2009.  Thus, Petitioner's one year limitations period would have been tolled from the time of its inception, on August 12, 2008, until October 27, 2009.  It began running thereafter, and would have expired on October 27, 2010.

**Effect of Amended Petition** - Respondents argue that Petitioner's Amended Petition, which was not filed until November 22, 2010, was thus untimely.  However, Petitioner's original petition was filed on October 7, 2010, well before the statute expired.  Respondents make no mention of this fact.

Applications for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."   28 U.S.C. § 2242.  Further, Rule 15(c), Federal Rules of Civil Procedure provides:

(1)    ***When an Amendment Relates Back***.   An amendment of a

---

[5]  Without that reading of *Thorson*, the undersigned would conclude that Petitioner was entitled to tolling until his time to seek review in the Arizona Court of Appeals expired. Under the PCR court's second grant of extension, that time did not expire until April 30, 2010.  In light of the Arizona Court of Appeals' explicit recognition of the PCR Court's authority to extend the time, the undersigned does not find it relevant that the first petition for review had been rejected as untimely, any more than a denial of a premature petition for review would be deemed to foreclose a subsequent, timely petition.

pleading relates back to the date of the original pleading when:

\* \* \*

(B)    the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set out - - or attempted to be set out - - in the original pleading; or

(C)    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Here, the claims in Petitioner's original and amended Petition are essentially identical. The former was dismissed because "Petitioner failed to name the state officer having custody of him as a Respondent." (Order 11/4/10, Doc. 6.) Thus, the only difference between the two petitions was the shift from naming the "State of Arizona" and the "Attorney General of the State of Arizona" (Doc. 1 at 1) to naming "Charles Ryan" and the "Attorney General of the State of Arizona, Terry Goddard" (Doc. 8 at 1).

Thus, Rule 15(c)(1)(C) governs the amendment. That rule requires two things for relation back of an amendment changing a party: (1) assertion of the same claim; and (2) notice and actual or imputed knowledge of the mistake to the real party within the Rule 4(m) time for service of the original pleading.

As noted above, the amended complaint asserts the same claim. In *Mayle v. Felix*, the Supreme Court clarified that the relevant "occurrence" for purposes of Rule 15(c) is not the trial or conviction, but the specific claims being asserted. "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." 545 U.S. 644, 664 (2005). Here more than "common core " of facts were asserted - - the claims were identical.

Further, Respondent Ryan was served with the corrected, amended Petition by certified mail, delivered January 4, 2011. (Doc. 10.)   That was within the requirement of Rule 4(m) that service be completed within 120 days of filing. That deadline would not have

expired until February 4, 2011.  By service of the Amended Petition, Respondent had notice sufficient to avoid any prejudice, and actual knowledge that he was the party to the action. *See Morel v. Daimler-Chrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009) (notice by letter with copy of amended pleading sufficient).

Therefore, the Amended Petition (Doc. 8) related back in time to the filing of the original Petition (Doc. 1) on October 7, 2010.  That was well before the October 27, 2010 expiration of the statute of limitations.

**7. Summary**

Petitioner's conviction became final on August 12, 2008, upon expiration of his time to file a petition for writ of certiorari with the U.S. Supreme Court.  Petitioner's one year was tolled from its inception until the dismissal of his PCR petition on October 27, 2009.  The one year expired on October 27, 2010.  Petitioner's Amended Petition, related back in time to the filing of his original Petition on October 7, 2010.  Accordingly, Petitioner's Amended Petition was timely.[6]

**B.  EXHAUSTION & PROCEDURAL DEFAULT**

Respondents argue that Petitioner failed to properly exhaust his state remedies on the claims presented in his habeas petition.  Respondents argue that these claims are now procedurally defaulted, and thus must be dismissed with prejudice.

**1.  Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)

---

[6]  Because the undersigned concludes that the Amended Petition was timely, the undersigned does not address whether Petitioner would be entitled to equitable tolling as a result of the Arizona Court of Appeals' failure to take into account the PCR court's second grant of an extension of time to seek review.

1  (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28

2  U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to

3  show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104

4  (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

5      **a.  Proper Proceeding**

6      Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first

7  raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-

8  conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir.

9  1994).   Only one of these avenues of relief must be exhausted before bringing a habeas

10  petition in federal court.   This is true even where alternative avenues of reviewing

11  constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211

12  (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S.

13  1059 (1989).

14      **b.  Proper Forum**

15      Ordinarily, a petitioner has not satisfied the exhaustion requirement unless he has

16  fairly presented his claim to the highest state court.  *Roettgen v. Copeland*,  33 F.3d 36, 38

17  (9th Cir. 1994).  In *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999), the Ninth

18  Circuit held that under Arizona law, absent a death penalty or life sentence, Arizona state

19  prisoners have exhausted claims presented in habeas petitions if they have been ruled upon

20  by the Arizona Court of Appeals.

21      Respondents argue that presentation to the Arizona Supreme Court (not just the

22  Arizona Court of Appeals) is required for exhaustion, citing *Baldwin v. Reese*, 554 U.S. 27

23  (1999).  (Answer, Doc. 13 at 4-5.)   The Ninth Circuit's subsequent reliance on *Swoopes* in

24  *Castillo v. McFadden*, 370 F.3d 882, 887 (9th Cir. 2004), notwithstanding *Baldwin*, dispels

25  this argument. Moreover, nothing in *Baldwin* precludes the reasoning in *Swoopes*.  Nor does

26  the language cited by Respondents from *State v. Ikirt*, 160 Ariz. 113, 117, 770 P.2d 1159,

27  1163 (1989), which predated the Arizona Supreme Court's decision in *State v. Sandon*, 161

28  Ariz. 157, 777 P.2d 220 (Ariz.1989), on which *Swoopes* is based.

**c.  Fair Presentment**

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam).

On the other hand, both the federal and state courts are tasked with enforcement of the federal constitution.  *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  Thus, "a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." *Id.*

**d.  Application to Petitioner's Claims**

**(1) Ground One - Ineffective Assistance of Counsel** - In his Ground One, Petitioner argues that he was provided ineffective assistance of counsel at sentencing because counsel failed to present expert testimony and failed to obtain an extension of time to do so. Petitioner claims that the issue was raised on direct appeal and in his PCR proceeding. (Amend. Petition, Doc. 8 at 6.)

No such claim was raised on direct appeal.  Petitioner did assert that the trial court's failure to permit an opportunity for the expert's opinion was an abuse of discretion.  (Exhibit H, Opening Brief at 19-29.)  However, Petitioner did not assert that counsel was ineffective. While ineffective assistance and an underlying constitutional claim are "admittedly related,

they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts." *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005) (finding 5th Amendment claim not exhausted by presentation of related ineffective assistance claim).  A claim has been fairly presented to the state's highest court if the petitioner has described **both** the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003).

It is possible that Petitioner raised his federal claim for the first time in his Petition for Review to the Arizona Supreme Court.  Respondents have not provided that Petition, despite the mandate of Rule 5(d), Rules Governing Section 2254 proceedings.  Nonetheless, presentation of a claim for the first time to the Arizona Supreme Court is not fair presentation.  In *Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004), the court reiterated that to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review." *Id.* at 916.

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Id.* (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998) (emphasis added)).    Thus any of Petitioner's otherwise unexhausted claims presented for the first time to the Arizona Supreme Court, would be unexhausted.

Petitioner did argue in his PCR proceeding that trial counsel was ineffective for failing to be prepared to present or obtaining continuances necessary to present expert testimony at sentencing.  (Exhibit G, PCR Mem. at 7-8.)  However, no such claim (nor any other) was raised in Petitioner's foray to the Arizona Court of Appeals in his PCR proceedings.  (Exhibit E, Not. Pet. Rev.)  Presentation to the PCR court is not sufficient.

Accordingly, the undersigned finds that Petitioner has failed to exhaust his state remedies on claims in his Ground One.

**(2) Ground Two - Due Process** - In his Ground Two, Petitioner mounts a Fourteenth Amendment Due Process challenge based upon the trial court's refusal to grant him an

1   extension of time to present his expert's testimony.  Petitioner again argues this claim was

2   presented on direct appeal and in his PCR proceedings.  (Amend. Pet. Doc. 8 at 7.)

3          While Petitioner raised the factual issues in his direct appeal, he made no explicit

4   assertion of a violation of due process.  He did, however, assert that he had the

5   "constitutional and statutory right to the assistance of proper psychological testing and expert

6   assistance." (Exhibit H, Open. Brief at 27.)  Petitioner made this argument by quoting *State

7   v. Eastlack*, 180 Ariz. 243, 883 P.2d 999 (1994).

> "...Despite what may have been dilatory behavior on the part of defense
> counsel, we hold that, under the peculiar facts and circumstances of this
> case, it was improper to proceed to sentencing without providing
> defendant the opportunity of expert assistance. Cf. State v. Knapp, 114
> Ariz. 531, 540-41, 562 P.2d 704, 713-14 (1977). Having thoroughly
> reviewed the record, we find that defendant had the constitutional and
> statutory right to the assistance of proper psychological testing and
> expert assistance."

12   (Exhibit H, Open. Brief at 27 (quoting *Eastlack,* 180 Ariz. at 263, 883 P.2d at 1019).)

13          *Eastlack's* finding of such a constitutional right was founded upon *Ake v. Oklahoma*,

14   470 U.S. 68 (1985).  *Ake* found a Fourteenth Amendment Due Process right to the assistance

15   of psychiatric experts in capital cases.  "Under *Ake* [ ], when an indigent defendant places his

16   mental state at issue, 'the State must, at a minimum, assure the defendant access to a

17   competent psychiatrist who will conduct an appropriate examination and assist in evaluation,

18   preparation, and presentation of the defense.' This right applies not only at trial, but also in

19   "the sentencing phase.' " *Smith v. McCormick,* 914 F.2d 1153, 1157 (9th Cir. 1990).[7]

20          "[A] citation to a state case analyzing a federal constitutional issue serves the same

21   purpose as a citation to a federal case analyzing such an issue." *Peterson v. Lampert*, 319

22   F.3d 1153, 1158 (9th Cir. 2003).  Thus, despite Petitioner's failure to cite to the Fourteenth

23   Amendment or to explicitly identify his claims as founded upon federal constitutional law,

24   by relying on *Eastlack*, Petitioner fairly presented his federal due process claim in Ground

25   Two.

---

28   [7]   As discussed hereinafter, however, *Eastlack*, *Ake*, and *Smith* all dealt with capital
cases.  Here, Petitioner was not sentenced to death, nor even charged with a capital crime.

**(3) Ground Three - Excessive Sentence** - In his Ground Three, Petitioner argues he received an "excessive sentence" because of the reliance upon prior convictions as aggravating circumstances which were not properly established. Petitioner again argues he raised this claim on direct appeal and in his PCR Petition.  (Amend. Pet. Doc. 8 at 8.)

It is unclear to the undersigned the exact nature of Petitioner's constitutional claim. It is clear, however, that Petitioner did not exhaust his state remedies on any related federal claim.

Petitioner did assert on direct appeal that there was a discrepancy between the written minute entry and the oral pronouncement of sentence, with the written minute entry finding the convictions to be for non-repetitive offenses, and the oral pronouncement sentencing Petitioner to terms applicable for repetitive offenses.  (Exhibit H, Open. Brief at 30-47; Exhibit A, Mem. Dec. at 15.)  However, Petitioner did not assert any federal law in connection with that claim.

Petitioner raised no factually related claim to the PCR Court or the Arizona Court of Appeals in his PCR proceeding.  (*See* Exhibit G, PCR Mem.; Exhibit E, Pet. Rev.)

Accordingly, Petitioner failed to fairly present any federal claim now raised in his Ground Three, and his state remedies on this claim are unexhausted.

**(4) Abuse of Discretion at Sentencing** - In his Ground Four, Petitioner argues that the trial court abused its discretion by failing to adequately investigate facts relevant to his sentence, *i.e.* expert testimony and other mitigating factors. Petitioner does not clarify the constitutional provision or principle he believes to have been violated.  Petitioner again argues he presented these claims in his direct appeal and his PCR proceeding. (Amend. Pet. Doc. 8 at 9.)

To the extent that Petitioner relies upon the failure of the Court to permit expert psychiatric testimony, this claim is essentially the same claim as that asserted in Ground Two, and was exhausted by presentation on direct appeal.

To the extent that Petitioner relies upon the failure of the Court to investigate and consider other mitigating evidence, Petitioner failed to exhaust his state remedies on that

1   claim, having not presented such a federal claim on direct appeal or in his PCR proceeding.

2   (*See* Exhibit H, Open. Brief; Exhibit G, PCR Mem.; Exhibit E, Pet. Rev.)

3          Petitioner did argue on direct appeal that the trial court had abused its discretion in

4   sentencing by failing to conduct an adequate investigation, citing *State v. Jenkins*, 193 Ariz.

5   115, 970 P.2d 947 (App. 1998).  (Exhibit H. Open Brief at 22-23.)  However, Petitioner did

6   not assert this as a constitutional claim, nor did the Arizona Court of Appeals address it as

7   one.  (*See* Exhibit A, Mem. Dec. at 9.)  Moreover, the discussion of the investigation or

8   consideration of general mitigating factors in the *Jenkins* case was not founded upon any

9   constitutional principles.  *Jenkins*, 193 Ariz. at 121-122, 970 P.2d at 953-954.  Neither were

10  the other state cases cited by Petitioner founded upon federal law. *i.e. State v. Kelley*, 126,

11  Ariz. 193, 613 P.2d 857 (App. 1980); *and State v. Watton*, 164 Ariz. 323, 793 P.2d 80

12  (1980). (*See* Exhibit H, Open. Brief at 23.)

13         **e.  Summary re Exhaustion**

14         Petitioner failed to fairly present to the state courts his federal claims in Grounds One

15  and Three, and the portion of his Ground Four founded upon mitigating evidence other than

16  psychiatric expert testimony.  Thus, his state remedies on these claims were not properly

17  exhausted.

18

19  **2.  Procedural Default**

20         Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*,

21  929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly

22  exhaust his available administrative or judicial remedies, and those remedies are now no

23  longer available because of some procedural bar, the petitioner has "procedurally defaulted"

24  and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a

25  procedurally barred or procedurally defaulted habeas claim is generally proper absent a

26  "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11

27  (1984).

28         Two Arizona rules commonly bar delayed presentations of claims: Arizona's waiver

1   bar, set out in Ariz. R. Crim. Proc. 32.2(a), and its timeliness bar in Ariz. R. Crim. P. 32.4.[8]

2       **Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct

3   appeal expires twenty days after entry of the judgment and sentence.   The Arizona Rules of

4   Criminal Procedure do not provide for a successive direct appeal.   *See generally*

5   Ariz.R.Crim.P. 31.   Accordingly, direct appeal is no longer available for review of

6   Petitioner's unexhausted claims.

7       **Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a

8   subsequent PCR Petition.

9       <u>Waiver Bar</u> - Under the rules applicable to Arizona's post-conviction process, a claim

10   may not ordinarily be brought in a petition for post conviction relief that  "has been waived

11   at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).

12   Under this rule,  some claims may be deemed waived if the State simply shows "that the

13   defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding."

14   *Stewart v. Smith*,  202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P.

15   32.2, Comments).  For others of "sufficient constitutional magnitude," the State "must show

16   that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the

17   ground or denial of a right."  *Id.*  That requirement is limited to those constitutional rights

18   "that can only be waived by a defendant personally."  *State v. Swoopes*  216 Ariz. 390, 399,

19   166 P.3d 945, 954 (App.Div. 2, 2007).  In coming to its prescription in *Stewart v. Smith*, the

20   Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right

21   to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona

22   Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46

23

24   --------

25       [8] Respondents identify as applicable bars:  the time limit on PCR petitions for review and Arizona's waiver bar as to Ground Two; and the time limits on direct appeals and PCR

26   petitions for review and preclusion and waiver bars as to Ground Three.  (Answer, Doc. 13 at 6-8.) No procedural bars are discussed with respect to Grounds One or Four.  (A

27   preclusion bar only applies where the claim has been presented, which would imply exhaustion.)   However, the undersigned considers the effect of each applicable bar,

28   notwithstanding the incompleteness in Respondents' arguments.

1   P.3d at 1071.[9]  Petitioner's unexhausted claim does not fit within those categories.

2       <u>Timeliness Bar</u> - Even if not barred by waiver, Petitioner would now be barred from

3   raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for

4   post-conviction relief (other than those which are "of-right") be filed "within ninety days

5   after the entry of judgment and sentence or within thirty days after the issuance of the order

6   and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128,

7   912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition

8   of pleading defendant deemed direct appeal for purposes of the rule).   That time has long

9   since passed.

10      <u>Exceptions</u> - Rules 32.2 and  32.4(a) do not bar waived or dilatory claims if they fall

11  within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  *See* Ariz. R.

12  Crim. P.  32.2(b) (exceptions to waiver bar); Ariz. R. Crim. P.  32.4(a) (exceptions to

13  timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his

14  claims.    Nor, does it appears that such exceptions would apply.  The rule defines the

15  excepted claims as follows:

16          d. The person is being held in custody after the sentence imposed has
            expired;
17          e. Newly  discovered  material  facts  probably  exist  and  such  facts
            probably  would  have  changed  the  verdict  or  sentence.  Newly
18          discovered material facts exist if:
            (1) The newly discovered material facts were discovered after the trial.
19          (2) The defendant exercised due diligence in securing the newly
            discovered material facts.
20          (3) The newly discovered material facts are not merely cumulative or
            used solely for impeachment, unless the impeachment evidence
21          substantially undermines testimony which was of critical significance
            at trial such that the evidence probably would have changed the verdict
22          or sentence.

23

24      [9]  Some other types of claims addressed by the Arizona Courts in resolving the type
    of waiver required include: ineffective assistance (waived by omission), *Stewart,* 202 Ariz.
25  at 450, 46 P.3d at 1071; right to be present at non-critical stages (waived by omission),
    *Swoopes*, 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by
26  omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy
    (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence
27  (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of
    interest (waived by omission), *State v. Westmiller*,  2008 WL 2651659 (App. 2008).

f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Petitioner makes no assertion of "newly discovered evidence" and where such evidence has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.  Paragraph (f) has no application where the petitioner filed a timely notice of appeal.  Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural challenges to his sentence. *See State v. Swoopes*, 216 Ariz. 390, 404, 166 P.3d 945, 959 (App. 2007) (32.1(h) did not apply where petitioner had " not established that trial error ...amounts to a claim of actual innocence").

<u>Summary</u> - Accordingly, the undersigned must conclude that review through Arizona's direct appeal and post-conviction relief process is no longer possible for Petitioner's unexhausted claims.

**<u>Summary re Procedural Default</u>** - Petitioner failed to exhaust his federal claims in in Grounds One and Three, and the portion of his Ground Four founded upon mitigating evidence other than a psychiatric expert testimony, and is now procedurally barred from doing so.  Accordingly, these unexhausted claims are procedurally defaulted, and absent a showing of cause and prejudice or actual innocence, must be dismissed with prejudice.

## C.  CAUSE AND PREJUDICE

If a habeas petitioner has procedurally defaulted on a claim, or it has been

procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984). Although both "cause" and "prejudice" must be shown to excuse a procedural default, a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).

"Cause" is the legitimate excuse for the default. *Thomas*, 945 F.2d at 1123. Petitioner offers nothing to establish cause to excuse his procedural default or procedural bar.

**Actual Innocence** - The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).

Petitioner makes no pretension of establishing his actual innocence as an excuse for a procedural default.

**Summary re Procedurally Defaulted & Procedurally Barred Claims** - Petitioner has failed to show cause to excuse his procedural default and/or the procedural bar, and has failed to show his actual innocence to avoid them  Accordingly, Grounds One and Three, and the portion of Petitioner's Ground Four founded upon mitigating evidence other than a psychiatric expert testimony. must be dismissed with prejudice.


**D. MERITS OF GROUNDS TWO AND PORTION OF FOUR**

In his Ground Two, Petitioner mounts a Fourteenth Amendment Due Process challenge based upon the trial court's refusal to grant him an extension of time to present his expert's testimony. (Amend. Pet. Doc. 8 at 7.) In the exhausted portion of his Ground Four, Petitioner argues that the trial court abused its discretion in failing to consider such evidence. (*Id.* at 9.) These two exhausted claims are essentially the same.

1    As presented via his arguments to the state courts under *State v. Eastlack*, Petitioner's
2    federal claims are founded upon the Supreme Court's decision in *Ake v. Oklahoma*. As noted
3    above, *Ake* found that due process mandated access to expert psychiatric testimony at
4    sentencing in a capital case.

5    Respondents have not addressed the merits of these claims.

6    Because the undersigned concludes that the resolution of the matter depends upon a
7    question of law, rather than fact, and upon the limitations on habeas relief rather than the
8    theoretical merits of the claim, the undersigned has not mandated supplemental briefing on
9    the issue.

10    The Arizona Court of Appeals distinguished *Eastlack* as involving a defendant who
11    "was potentially facing the death penalty," and on the basis that Petitioner had an opportunity
12    to present mitigating factors and failed to show that his proposed expert would have
13    produced evidence not already presented. (Exhibit A, Mem. Dec. at 9, n. 4.)

14    This federal habeas court can only grant relief if that decision was "contrary to, or an
15    unreasonable application of, clearly established Federal law, as determined by the Supreme
16    Court of the United States," 28 U.S.C. §2254(d)(1), or "based on an unreasonable
17    determination of the facts in light of the evidence presented in the State court proceeding,"
18    28 U.S.C. § 2254(d)(2).

19    The undersigned cannot make this finding because the application of *Ake* at
20    sentencing in non-capital cases is not "clearly established Federal law."

21    Although it is far from clear whether *Ake* should have any application outside capital
22    cases, at least one Ninth Circuit jurist has concluded that "[u]nder *Ake*, entitlement to a
23    psychiatric expert at sentencing is limited to defendants charged with capital crimes." 623
24    F.3d 1258, 1280 (9th Cir. 2010) (Ikuta, J., dissenting). *See* McGraw, *Life but Not Liberty?*
25    *An Assessment of Noncapital Indigent Defendants' Rights to Expert Assistance under the Ake*
26    *v. Oklahoma Doctrine,* 79 Wash. U. L.Q. 951, 966 (Fall 2001) (discussing disparate treatment
27    on application of *Ake* outside capital sentencing). *But see Little v. Armontrout*, 835 F.2d
28    1240, 1243 (8th Cir.1987) (applying *Ake* to non capital case, "Nor do we draw a decisive line

1  for due-process purposes between capital and noncapital cases."). *Compare Ake*, 470 U.S.

2  at 87 (Burger, J. concurring) ("Nothing in the Court's opinion reaches non-capital cases")

3  *with Ake*, *id.* (Rehnquist, J. dissenting) ("the constitutional rule announced by the Court is

4  far too broad. I would limit the rule to capital cases"). *See also U.S. v. George,* 85 F.3d 1433,

5  1438 (9th Cir. 1996) ("assuming [*arguendo*] that *Ake* applies to noncapital cases").

6      The explicit language of the holding in *Ake* as to provision of experts at trial did not

7  include a limitation to capital cases:

8          We hold that when a defendant has made a preliminary showing that
           his sanity at the time of the offense is likely to be a significant factor at
9          trial, the Constitution requires that a State provide access to a
           psychiatrist's assistance on this issue if the defendant cannot otherwise
10         afford one.

11  *Ake*, 470 U.S. at 74.  Indeed, the Court framed its analysis of the private interest involved on

12  this point without limitation to capital cases: "The private interest in the accuracy of a

13  criminal proceeding that places an individual's life *or liberty* at risk is almost uniquely

14  compelling." *Id.* at 78 (emphasis added).

15      However, when turning to the necessity of an expert at sentencing, the Court

16  repeatedly limited its analysis to the context of capital sentencing: "...in the context of a

17  capital sentencing proceeding...at the sentencing phase of a capital case...profound interest

18  in assuring that its ultimate sanction is not erroneously imposed." *Id.* at 83-84.  The Court's

19  holding was similarly circumspect:

20          In such a circumstance, where the consequence of error is so
           great, the relevance of responsive psychiatric testimony so evident, and
21         the burden on the State so slim, due process requires access to a
           psychiatric examination on relevant issues, to the testimony of the
22         psychiatrist, and to assistance in preparation at the sentencing phase.
    *Id.* at 84.

23      Given this limited holding in *Ake*, the undersigned cannot find that the state court

24  acted "contrary to" a holding of the U.S. Supreme Court in declining to find an obligation

25  to permit the expert testimony.

26      Given the divergence among reasonable jurists about whether *Ake* applies at

27  sentencing outside the capital context, the undersigned cannot find that the rejection of

28

Petitioner's claim was an unreasonable application of Supreme Court law.

Consequently, even if this Court could conclude that *Ake* did mandate expert testimony in Petitioner's non-capital case, the limitations on habeas relief in 28 U.S.C. § 2254(d) would prevent a grant of the Petition.  Accordingly, Petitioner's Ground Two and the related portion of Ground Four are without merit and must be denied.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being  resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein, the constitutional claims, as limited by the 28 U.S.C. § 2254(d), are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds One and Three, and the portion of Ground Four founded upon mitigating evidence other than psychiatric expert testimony, of the Petitioner's Amended Petition for Writ of Habeas Corpus, filed November 22, 2010 (Doc. 8) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that remainder of Petitioner's Amended Petition for Writ of Habeas Corpus, filed November 22, 2010 (Doc. 8) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability **BE DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

1   have fourteen (14) days from the date of service of a copy of this recommendation within

2   which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing

3   Section 2254 Proceedings.  Thereafter, the parties have fourteen (14) days within which to

4   file a response to the objections.  Pursuant to *Local Civil Rule 7.2(e)(3)*, unless otherwise

5   permitted by the Court, an objection to a Report and Recommendation shall not exceed ten

6   (10) pages.  Failure to timely file objections to any findings or recommendations of the

7   Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of

8   the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),

9   and will constitute a waiver of a party's right to appellate review of the findings of fact in an

10  order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins*

11  *v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

13  DATED: June 15, 2011

14                                                                                        JAY R. IRWIN
                                                                                          United States Magistrate Judge

15  S:\Civil Cases\Active Cases\Lopez 2-10CV2159-06-15-091r00b RR-11-09-27 m HC.wpd

- 26 -